L. W. FLACK, Plaintiff, v. LINDEN BANK et al., Appellees; VAN METER STATE BANK, Trustee, Appellant.

No. 39866.

JANUARY 21, 1930.

REHEARING DENIED OCTOBER 23, 1930.

16

*White & Clarke, Ben J. Gibson,* and *Clarence I. Spencer,* for appellant.

*Graham & Osborn* and *Bradshaw, Schenk & Fowler,* for Guy H. Hall, Receiver, and the Linden Bank, appellees.

GRIMM, J.—This case arises upon a claim filed by the Van Meter State Bank, trustee, against Guy H. Hall, receiver of the Linden Bank of Linden, by which the claimant seeks to reach certain dividends received and to be received on account of the claim established in favor of the Linden Bank by the district court of Polk County, Iowa, on the 2d day of June, 1922, in the receivership of the Associated Packing Company in Des Moines. The said Linden Bank, on the 9th day of November, 1925, became insolvent, and Guy H. Hall was appointed receiver. It is alleged by the claimant appellant that certain dividends have been paid by the receiver of the Associated Packing Company to Guy H. Hall, receiver of the Linden Bank, and that further dividends are yet to be paid. It is claimed that the Van Meter State Bank, trustee, has a lien on all of these dividends. The amended and substituted claim of the Van Meter State Bank was filed against Hall, receiver of the Linden Bank, on the 17th day of April, 1928. The claim was in reality filed by the Van Meter State Bank, as trustee, for certain stockholders of the bank, under a certain contract of assignment, whereby certain notes given by various stockholders and others were assigned to the Van Meter State Bank, as trustee, in order that the said stockholders should be reimbursed for money contributed by said parties to prevent the insolvency of the said Van Meter State Bank. The claim of the Linden Bank hereinbefore referred to, as approved against the Associated Packing Company, was for $216,571.10. Before the appointment of Hall as receiver of the Linden Bank, it had received a substantial sum as dividends

upon the claim against the Packing Company, and it was promptly distributed, as will appear hereinafter.

It is appellant's claim that the entire amount collected and to be collected by the Linden Bank from the receiver of the Associated Packing Company is to be divided into three equal parts, to (1) Linden Bank, or its receiver, (2) the Van Meter State Bank, trustee, and (3) the receiver of the Mechanics Savings Bank.

Historically it may be stated that, sometime in the summer of 1919, while George H. Messenger was superintendent of banking of the state of Iowa, there was organized a syndicate known as Messenger-Rowe Syndicate, which it is claimed was organized for the purpose of negotiating the sale of notes. This syndicate was composed of George H. Messenger, George L. Rowe, Vernon W. Miller, and E. J. Morrissey. Miller was assistant in the office of Messenger, superintendent of banking. Morrissey was a bank examiner under Messenger, and George L. Rowe was cashier of the Mechanics Savings Bank of Des Moines, Iowa.

The Associated Packing Company was an Iowa corporation, ostensibly organized to construct, maintain, and operate a packing plant in Des Moines, Iowa. Its resources were to be derived through the sale of its capital stock. This was done by taking a so-called subscriber's contract to purchase and pay for a certain number of the shares of said stock, and in most instances, a portion of the par value of the stock purchased was paid for in cash, and the balance was represented by notes. On the 28th day of October, 1919, the Linden Bank and the Associated Packing Company entered into a written contract, whereby the Linden Bank agreed to purchase notes aggregating $1,500,000, par value, of the Associated Packing Company, and to pay therefor the sum of $1,440,000 installments, as set out in the contract. At that time, the Linden Bank was a private bank, owned by L. W. Flack, Charles G. Cockerill, Parke L. Cockerill, P. C. Cockerill, and May C. Warrington. Flack at that time was cashier. It appears that this contract was secured and prepared by Messenger. Messenger had formerly been a partner in the Linden Bank, but withdrew on June 30, 1917. Flack and Messenger were brothers-in-law. The Cockerills and May Warrington were brothers and sister. Mrs. Messenger and Mrs. Flack were sisters of the Cockerills'. At the time this contract (October 28,

1919) was signed, Messenger was the president of the Van Meter State Bank, and Clarence Dunn was its cashier. It had a capital of $55,000. The capital of the Linden Bank was $20,000. Shortly after the contract of October 28, 1929, was entered into, it is claimed there was a verbal agreement made, whereby each of the three banks,—to wit, the Linden Bank, the Van Meter State Bank, and the Mechanics Savings Bank,—was to furnish and advance one third of the funds necessary to carry out the said contract of the Linden Bank with the Associated Packing Company. These payments were to be made by each of the banks as called for by Flack, and it is claimed that the payments were to draw 6 per cent interest, and each of the banks was to receive one fourth of the profits of the transaction. The other fourth of the profits was to go to the Messenger-Rowe Syndicate. It is claimed that the oral agreement provided that, when each of the banks advanced funds, Flack should deliver to them notes of subscribers to the stock of the Associated Packing Company of an equal amount, as collateral. It is also claimed that, as a part of this verbal agreement, when either of these assisting banks— that is to say, the Van Meter State Bank or the Mechanics Savings Bank—desired to withdraw from the enterprise, the Linden Bank was to reimburse them for all advances, and they might withdraw from the contract. When an advance of money was desired from the assisting banks, Flack would notify each of the banks, and they would give the Linden Bank credit for the amount called for, upon which it would check, and Flack would call on Messenger or Rowe of the Syndicate for a sufficient amount of the Packing Company notes to cover the credit, and these notes were then transmitted to the assisting banks. The Associated Packing Company notes were of different maturities, and all drew interest. It appears that, when any of these subscription notes were paid, the payment was made to the Linden Bank. If, for illustration, a note which was paid, had been delivered to the Van Meter State Bank and was held by it at the time of payment, it was returned to the Linden Bank, and another equivalent stock subscription note was substituted for it. Pursuant to this agreement, the Van Meter State Bank, between the dates of November 7, 1919, and January 22, 1920, both inclusive, paid to the Linden Bank the total sum of $93,798.05 in excess of receipts. It is claimed that, on the 27th day of Febru-

ary, 1920, the Van Meter State Bank had furnished and paid to the Linden Bank under said contract, in excess of all reimbursements, the sum of $93,798.38. On the last named date, H. M. Havner, then attorney-general of Iowa, began an action in ouster in the district court of Polk County, Iowa, against the Associated Packing Company, because of alleged frauds in its organization and the conduct of its business, making the Linden Bank a party, and praying for the dissolution of the Packing Company, the winding up of its business, the marshaling of its assets, the liquidation of its liabilities, and the distribution of its assets, and for general equitable relief. This ouster petition also alleged that the Linden Bank had in its possession notes of subscribers to the stock of the Associated Packing Company in excess of a million dollars. An injunction was prayed for, preventing the Linden Bank, its copartners and agents, from collecting or in any manner disposing of any of said notes, and the appointment of a receiver was asked for. An injunction was issued against the Linden Bank. A temporary receiver was appointed for the Packing Company, and afterwards the receivership was made permanent. In this litigation the Linden Bank answered that it had notes of the Associated Packing Company in its possession, which, on February 27, 1920, were of the face value of $1,863,-398.40, which notes were, as it alleged, acquired by virtue of the said contract of October 28, 1929. It claimed to have advanced to said Packing Company, over all reimbursements, the sum of $298,016.36. On October 22, 1920, a decree was entered in said Packing Company cause, ousting said corporation, revoking and annulling its charter, ordering a distribution of its assets, and directing the receiver to collect and convert all its assets and make distribution of the same under the orders of the court. The restraining order against the Linden Bank was continued, for further orders by the court. The Linden Bank filed a claim with the receiver of the Associated Packing Company for the sum of $283,287.98, not including interest. On June 2, 1922, the claim of the Linden Bank was allowed in the Packing Company receivership in the sum of $216,751.10, but upon the condition that the Linden Bank turn over to the receiver all promissory notes given by stockholders and subscribers for stock in the Associated Packing Company then held by the Linden Bank. The decree canceled and set aside the Linden Bank contract of

October 28, 1919, and the Linden Bank surrendered to the receiver all the Packing Company notes held by it.

It is claimed that, on March 8, 1920, the Van Meter State Bank was requested to surrender all of the Associated Packing Company notes which it possessed, in exchange for notes of B. C. Messenger, Eva C. Flack, L. W. Flack, Parke L. Cockerill, George L. Rowe, V. W. Miller, and E. J. Morrissey, in the sum of $11,000 each, or a total of $77,000. The notes of B. C. Messenger and Eva C. Flack were guaranteed by G. H. Messenger. It also appears that, on the 17th day of May, 1920, the note of B. C. Messenger was taken up, and a similar note given by P. C. Cockerill was substituted. The note of Eva C. Flack, guaranteed by Messenger, was afterwards renewed by the note of Charles G. Cockerill. It is the claim of the appellant that George Messenger, acting as the agent for the Linden Bank, secured the said surrender of the Associated Packing Company notes by the Van Meter State Bank upon the verbal contract and understanding of the Linden Bank that the Van Meter State Bank was to receive one third of all the money obtained by the Linden Bank, or its receiver, upon its claim against the Associated Packing Company receiver, and that the said various notes of individuals, aggregating $77,000, hereinbefore referred to, were merely accommodation notes, placed in the Van Meter Bank temporarily, until such time as the Van Meter Bank should receive its said one third, and that in no event were the makers of the notes to make any payments of principal or interest. On the other hand, it is the claim of the defendants that George H. Messenger was not the agent or representative of the Linden Bank, and that, at the time the Associated Packing Company notes were surrendered by the Van Meter State Bank, there was a novation, whereby the parties who gave their notes, as hereinbefore stated, assumed to pay the Van Meter State Bank the amounts due from the Linden Bank to it.

The appellant contends that all money obtained by the receiver of the Linden Bank as dividends on its claim against the Associated Packing Company constitutes a trust fund in favor of the three banks: the Linden Bank, the Mechanics Savings Bank, and the Van Meter State Bank, trustee.

This is the main battle ground of this suit. There are many collateral claims, and there is great conflict of testimony.

I. It is conceded that, at the time of the oral agreement concerning the substitution of notes, Messenger was the president of the Van Meter State Bank. He was not an officer of the Linden Bank. Manifestly, before the appellant  can recover on the basis of such an oral agreement, it must first be satisfactorily shown that Messenger, at the time of the alleged oral agreement, was authorized to represent the Linden Bank in the making of the claim, or that the agreement, if made, was subsequently ratified. There is no evidence in the record of any express authority given to Messenger by the Linden Bank. There is uncontradicted evidence in the record to the effect that Messenger assumed to speak for the Linden Bank.

Mr. Dunn, who was cashier of the Van Meter State Bank at the time of the transaction in controversy, testified that Messenger had instructed him (Dunn) to send the Associated Packing Company notes in the possession of the Van Meter State Bank to the Linden Bank "for collection," notwithstanding the fact that none of them were due at that time, and notwithstanding the further fact that no request had then been made by the Van Meter State Bank that anything be done with reference to the Packing Company notes then held by the Van Meter State Bank. Very shortly thereafter, Messenger and Rowe appeared at the Van Meter State Bank with the notes of the Linden Bank partners and others, as hereinbefore described. Messenger's statement to Dunn was to the effect that he wanted the substitution of the notes made in order that the Linden Bank might file its claim against the Associated Packing Company, and that the Van Meter State Bank would get its share of the money collected from the claim of the Linden Bank against the Associated Packing Company. This agreement was the consideration for the surrender of the notes. The claim of the Van Meter Bank was to be paid out of the proceeds of the Linden Bank's claim against the Packing Company. It appears that Mr. Messenger made similar statements to Mr. Dunn on several subsequent occasions.

Dunn also testified that Mr. Flack, cashier of the Linden Bank, told him that the Van Meter Bank would receive its money when the Linden Bank received payment on its claim against the Associated Packing Company. This same Flack testified at another time, in substance, when commenting on the substituted

notes which he had signed, and which were in the possession of the Van Meter State Bank, as follows:

"I expected we would get our money in time. Q. Who would get it? A. The Linden Bank would get it. Q. They would have to get it from the Associated Packing Company? A. That is right."

Here is the interpretation placed upon the transaction by an active officer of the Linden Bank, and himself one of the makers of the substituted notes.

It is true that Dunn is, to some extent at least, impeached by a showing of his testimony as given on a previous hearing in the Associated Packing Company case. While some statements then made seem in conflict with the testimony of Dunn in the case at bar, nevertheless the first statements are more or less guarded and more or less true.

The Van Meter Bank was not a party to the Linden Bank claim against the Packing Company receiver. It had nothing to do with pressing the claim. It apparently was Dunn's position that the Linden Bank owed the Van Meter Bank, not that the Associated Packing Company or its receiver owed the Van Meter Bank. In a sense, then, it was true that the Van Meter Bank had no interest in the claim of the Linden Bank against the Packing Company receivership. However, it is claimed that the Linden Bank was to pay the Van Meter Bank the $93,798.38 as and when it made collections on its claim against the Packing Company receivership.

It appears without dispute that, at the time of the exchange of the notes referred to, there was due the Van Meter State Bank from the Linden Bank the sum of $93,798.38, and that afterwards, a dividend was paid on the claim of the Linden Bank against the Associated Packing Company, and forthwith there was paid to the Van Meter State Bank its one third of said dividend. This was applied in full payment of the Morrissey note, and the balance applied on the May Warrington note. When the Morrissey note was paid, it was returned to the Linden Bank. Again, on October 25, 1924, a further payment was made to the Van Meter State Bank.

It is most persuasive that, just as soon as a dividend was procured by the Linden Bank from the Packing Company re-

ceiver, a distribution was made to the Van Meter State Bank and the Mechanics Savings Bank, exactly in harmony with the appellant's claimed verbal agreement with Messenger. If Messenger was not authorized to make the alleged contract, binding the Linden Bank, why, almost three years after it was made, was the contract thus partially performed by the Linden Bank? This distribution of dividends on the Linden Bank claim is not only proof of the original contract to reimburse the Van Meter Bank, but a complete ratification by the Linden Bank of said contract. This payment is utterly inconsistent with the claim that the substituted notes were received by the Van Meter Bank in lieu of the obligation of the Linden Bank to the Van Meter Bank. It is, in fact, difficult to realize upon what theory these substituted notes were given to the Van Meter State Bank by people who had no interest in it, as compared to their interest in the Linden Bank, except upon the theory that, in the giving of these substituted notes, they were acting for and in the interest of the Linden Bank, in which they were partners, and for the purpose of getting the Packing Company notes back in their possession. The Messenger-Rowe Syndicate had other reasons for their acts.

The evidence also shows without dispute that the substituted notes were several times renewed, and it is significant that at no time was any interest added to the original face of the note, nor was any payment of interest ever made. This circumstance is persuasive of the claim of the appellant that these substituted notes were merely accommodation to the Linden Bank, but running to and placed with the Van Meter State Bank, in order that the Linden Bank might take up the Associated Packing Company notes, which had passed to the Van Meter State Bank through the Linden Bank. There is in the record no explanation why, if, as it claimed, there was a novation, and these substituted notes were given in exchange for and in full payment of the claim of the Van Meter State Bank against the Linden Bank, and in full payment for the surrender of the Associated Packing Company notes, interest, when these substituted notes were renewed, was not taken into account at all. Certainly this was contrary to the usual course of business. If the Van Meter State Bank had been looking to these substituted notes for its money, it would have added interest on each renewal.

One Vander Ploeg, who was bank examiner in charge of the

Mechanics Savings Bank, testified on the subject. It appears that, acting in his capacity in charge of the Mechanics Savings Bank, similar substituted notes were delivered to him, executed by the same parties. L. W. Flack, who was then cashier of the Linden Bank, and Mr. Messenger both talked to Vander Ploeg. Flack told Vander Ploeg that the substituted notes were accommodation notes, but that there was an agreement that the payment of the notes was to come from the collection of the claim established by the Linden Bank against the Associated Packing Company. He told Vander Ploeg that the notes were not collectible from the makers. In this same conversation, Flack told Vander Ploeg that *Messenger knew all about the situation; that he (Messenger) had handled the entire transaction.* Flack subsequently, while admitting the conversation, denied that he made exactly the same statement reported by Vander Ploeg. This testimony was introduced over objections. While it had to do with the relations between the Mechanics Savings Bank and the Linden Bank, nevertheless, under the facts as hereinbefore set forth, and the similarity of the relations between the Linden Bank and the Mechanics Savings Bank, on the one hand, and the Van Meter State Bank, on the other, a portion of this testimony must be given consideration. On the other hand, Flack stated, on cross-examination, in substance, that the Linden Bank had assumed an obligation in settlement with the Van Meter State Bank and the Mechanics Savings Bank for the cash furnished by each of them, and that the filing of the claim of the Linden Bank against the Associated Packing Company was made in good faith, upon the theory that the Linden Bank itself was, at the time, obligated for the amount for which the claim was executed and allowed: in other words, that the Linden Bank, in filing its claim against the Associated Packing Company, was acting, not only for itself, but also for the Van Meter State Bank and the Mechanics Savings Bank, to the extent of their respective claims for money advanced. Flack's testimony is more or less contradictory, and he seemed at times unwilling.

There is evidence in the record showing that, on March 20, 1920, and for some time thereafter, the books of the Linden Bank showed a credit to the Van Meter State Bank of $93,798.38, and a like credit to the Mechanics Savings Bank. In other words, the books of the Linden Bank showed its indebtedness to the

Mechanics Savings Bank and to the Van Meter State Bank of $93,798.38 each. This is eloquent and persuasive testimony that the substituted notes were furnished to the Van Meter State Bank simply as a banking subterfuge, to enable the Linden Bank to get the Associated Packing Company notes, and that the Linden Bank recognized its obligation to the Van Meter State Bank for the amount thus shown on its books to the credit of the Van Meter State Bank. If, as is contended, the obligation of the Linden Bank to the Van Meter State Bank had been taken over by the makers of the substituted notes, correct bookkeeping on the part of the Linden Bank, it would seem, should show this indebtedness to the makers of the substituted notes, instead of to the Van Meter State Bank.

It must not be overlooked that the original transaction with the Packing Company was by the Linden Bank. It obligated itself to furnish a large amount of money to the Packing Company. It is not in dispute that subsequently the Van Meter State Bank and the Mechanics Savings Bank were induced to furnish a portion of the necessary funds. The Linden Bank was a party to the Associated Packing Company's ouster procedure. It was in the clutches of the law, and under injunction. Naturally enough, it was casting about for every possible avenue of escape, and for every possible opportunity of adjusting its affairs with the receiver of the Associated Packing Company. Undoubtedly, those in charge of the Linden Bank desired a rescission of the bank's contract with the Packing Company. Naturally, they would expect to be called upon to surrender all of the Packing Company notes which had passed into their hands. How were they to get possession of these notes if part of them were in the files of the Van Meter State Bank and another portion of them in the files of the Mechanics State Bank? Who were the parties most interested in making a proper adjustment with the Packing Company receiver? Manifestly, the members of the Linden Bank partnership and the members of the Messenger-Rowe Syndicate.

The record is replete with evidence that, from the beginning of things, so far as this case is concerned, Messenger was one of the moving spirits, if not the chief one. The partners composing the Linden Bank were all related, by marriage or otherwise. Messenger was related to the members of the Linden Bank. The Messenger-Rowe Syndicate was Messenger's organization. His

was the guiding hand. Naturally enough, then, when the time came for the Linden Bank to get the Packing Company notes out of the possession of the Van Meter State Bank, Messenger was one of the parties handling the transaction. For whom was he acting, if not for the Linden Bank?

In order to get the Packing Company notes out of these banks, something had to be substituted therefor. It is apparent that the Linden Bank could not put up its notes, but it is persuasively significant that it was the notes of the partners composing the Linden Bank and the notes of the partners composing the Messenger-Rowe Syndicate which were placed with the Van Meter State Bank, in lieu of the Packing Company notes held by it. Upon what possible theory of procedure can it be claimed that the partners composing the Linden Bank should obligate themselves to the extent of $11,000 each, except upon the theory that Messenger had authority from the Linden Bank to substitute these individuals' notes for the Packing Company notes, in order that the Linden Bank might get possession of these Packing Company notes and file them with other similar notes, as a claim against the receiver of the Associated Packing Company? Every one of the parties whose notes were thus substituted who has spoken on the subject at all has testified that these substituted notes were accommodation paper, and were never to be paid by the makers, and that the Van Meter State Bank was to receive its pay for the notes which it had surrendered by ratable contributions from the funds received by the Linden Bank on its claim against the Packing Company receivership.

Some of the Linden Bank partners gave evidence in this case, and there is nothing to show that the others were not available; but there is no direct evidence in the record denying that Messenger had authority from the Linden Bank to take up the Packing Company notes in the hands of the Van Meter State Bank. There is no direct denial in the evidence that Messenger had authority, at the time the substitution was made, to promise and agree on behalf of the Linden Bank that the Van Meter State Bank should receive its compensation for surrendering the Packing Company notes from the proceeds of the Linden Bank's claim in the Packing Company receivership.

Of the parties who executed these substituted notes, Morris-

sey, Rowe, and Miller each testified, in substance, that the notes were merely accommodation notes, and that it was understood that the obligation to the Van Meter Bank would be paid by the Linden Bank, and not by the makers of the substituted notes. At times, these witnesses spoke of the substituted notes as being paid out of the proceeds of the collection of the Linden Bank claim against the Packing Company; but all the testimony is to the effect that the Van Meter State Bank claim was ultimately to be paid by the Linden Bank out of the proceeds of its claim against the Packing Company. On cross-examination, Flack, the cashier of the Linden Bank, testified, in substance, that, when the settlement was made by which the notes of March 8, 1920, were substituted for the Packing Company notes, the Linden Bank assumed that it had acquired an obligation to pay back to the Van Meter State Bank the money it had advanced through the Linden Bank on the Packing Company contract. White, one of the board of directors of the Van Meter State Bank, testified in reference to the conversation with Messenger in which Messenger said, in substance, that the substituted notes were to be paid out of the collection of the Linden Bank claim against the Associated Packing Company.

We do not overlook that there is evidence from which it may reasonably be inferred that the officers of the Van Meter State Bank appreciated the possible embarrassment of being caught with large amounts, in face value, of the notes of the Associated Packing Company in its possession, in view of the trouble and litigation into which the Associated Packing Company had fallen. It is fair to assume that Messenger, as president, would, in behalf of his own bank, do everything within his power to rid his bank of the Associated Packing Company notes.

There is also evidence tending to show that, at the time these substituted notes were filed with the Van Meter State Bank, the makers thereof were wealthy; and while this is reason for inferring that the Van Meter State Bank took the substituted notes in payment of this claim, on the other hand it lends coloring to the proposition that, in the last analysis, it was the Linden Bank which, for one or more reasons, was anxious to get the Associated Packing Company notes out of the hands of the Van Meter State Bank,—so much so that the partners were willing to file their personal notes with the Van Meter State Bank. The makers of

these substituted notes apparently were, at the time of the trial of this case, insolvent.

There is also evidence to show that, at or about the time these substituted notes were filed with the Van Meter State Bank, there were threats of legal proceedings which would result in bringing into the Associated Packing Company litigation the books of the Van Meter State Bank.

While there is no showing of any resolution by the board of directors of the Linden Bank, authorizing Messenger to make the alleged contract with the Van Meter State Bank, nevertheless, as previously stated, it is significant that no officer or member of the partnership composing the Linden Bank has denied the authority of Messenger in that regard, nor has any showing been made of the inability to procure the evidence of these parties. There is much manifest reason why records of the transactions then being indulged in were not being made. Unless it satisfactorily appears that the substituted notes were executed by the parties and delivered to the Van Meter State Bank, and by it received in lieu of the obligation of the Linden Bank to the Van Meter State Bank, then the obligation of the Linden Bank to the Van Meter State Bank still remains.

It is significant that the claim of the Linden Bank in the Packing Company receivership is based upon contributions made by the Linden Bank, the Van Meter State Bank, and the Mechanics Savings Bank. Manifestly, the Linden Bank should not be permitted to recover and hold any portion of its claim against the Packing Company based upon advancements made by the Van Meter State Bank unless it clearly appears that either the Van Meter State Bank has already been paid, or that it has, with knowledge of the facts, accepted the obligations of someone else, in lieu of that of the Linden Bank.

II. It is asserted by the appellee that the claim of the Linden Bank and the Van Meter Bank is barred by the statute of limitations. Suffice it to say that the agreement made with  the Van Meter State Bank was that it would be reimbursed when the Linden Bank recovered in the Packing Company receivership. In so far as this has been done, distribution and payment have been made. The balance of the payment has not yet been made, and the claim is not barred.

III. It is claimed by the appellee that much of the testimony in this case on behalf of the Van Meter State Bank is inadmissible, on the theory that it is within the Statute of Frauds (Section 11285, Code of 1927). As we view the situation, the substituted notes were mere subterfuges or temporary makeshifts, to satisfy bank examiners and others, and the real obligation in controversy in this case was that of. the Linden Bank to the Van Meter State Bank. It cannot be said that, merely because the notes of the individuals composing the Linden Bank were filed with the Van Meter State Bank, no one can be heard to testify to the real transaction between these two banks.

The whole record has been very carefully read, and all the questions raised have been fully considered. Neither a more complete recital of the facts as testified to by the witnesses named and others, nor a greater extension of discussion relating thereto, can be of any value to bench or bar. We reach the conclusion that the appellant is entitled to recovery, as prayed, and the cause is remanded for a decree in accordance with this finding. The case is—*Reversed*.

EVANS, FAVILLE, DE GRAFF, KINDIG, and WAGNER, JJ., concur.

MORLING, C. J., not participating.